Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, New Jersey 07073
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

Joshua W. Denbeaux
Denbeaux & Denbeaux
366 Kinderkamack Road
Westwood, New Jersey 07675
Telephone: (201) 664-8855
Facsimile: (201) 666-8589
filings@denbeauxlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| **SUSAN DELASSO**<br><br>            Plaintiff,<br><br>    vs.<br><br>**SELECT PORTFOLIO SERVICING, INC.**<br><br>        Defendant. | Case No.:<br><br>Judge:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Susan DeLasso, by and through counsel, for her Complaint against Defendant Select Portfolio Servicing, Inc., states:

### WHY DELASSO IS FILING THIS THIRD PARTY COMPLAINT

1.      This Complaint concerns material errors that SPS made by dual tracking DeLasso by processing a loss mitigation application from DeLasso while Deutsche was simultaneously pursuing a foreclosure action.

2.      DeLasso applied for a loan modification from SPS and despite SPS sending correspondence notifying DeLasso that her application was complete, SPS moved for foreclosure sale on the same day, giving rise to DeLasso's RESPA claims against SPS.

3.      DeLasso was "dual tracked" by SPS in violation of the new federal regulations governing mortgage servicers and the manner in which regulated mortgage servicers must behave when a borrower's loss mitigation application is pending prior to and during a foreclosure proceeding.

4.      Further, SPS either failed to properly provide a denial notice for all programs reviewed with reasons and an opportunity to appeal, or SPS failed to properly review DeLasso's application for all available loss mitigation options.

5.      At all times relevant herein, SPS serviced the Loan and was responsible to process DeLasso's loss mitigation applications and evaluations for mortgage relief options, all as anticipated by 12 U.S.C. §§ 2601, *et seq.* and the regulations promulgated thereunder.

6.      SPS's actions in this loss mitigation effort did not meet the minimal standards of conduct for mortgage servicers under the newly-enacted Regulation X and SPS has caused DeLasso great financial damage, humiliation, suffering, stress, and emotional distress, further damage to her credit standing, and forced DeLasso to incur attorneys' fees, all of which will appear more fully below.

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiff Susan DeLasso ("DeLasso") is the owner of residential real property, located at and commonly known as 450 Country Club Rd., Bridgewater, NJ 08807 (the "Property").

8.     DeLasso currently maintains the Property as her primary, principal residence, and has so maintained for all times relevant to this Complaint.

9.     Defendant Select Portfolio Servicing, Inc. ("SPS") is the current servicer of a note executed by DeLasso (the "Note") and of a mortgage on the Property that allegedly secures the Note (the "Mortgage") (collectively, the "Loan"). A copy of the Loan is attached as *Composite Exhibit 1*.

10.    SPS services the Loan on behalf of Deutsche National Bank Trust Company, as Trustee, for J.P. Morgan Mortgage Acquisition Trust 2007-CH3, Asset Backed Pass-Through Certificates, Series 2007-CH3 ("Deutsche"). SPS has been the servicer of the Loan since June 1, 2013, when servicing transferred to it from JPMorgan Chase Bank, N.A.

11.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

12.    This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* of Regulation X.

13.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as DeLasso maintains the Property as her primary residence within this District, SPS does business

within this District, and the conduct giving rise to the causes of action in this Complaint, *infra*, occurred primarily within this District.

## SUMMARY OF CLAIMS

14.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

15.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

16.     The Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. § 1024.2(b).

17.     SPS is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

18.     SPS is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

19.     DeLasso asserts claims for relief against SPS for breaches of the specific rules under Regulation X as set forth, *infra*.

20.     DeLasso has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

21.     DeLasso also asserts a statutory claim for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("CFA").

## FACTUAL BACKGROUND

22.     On July 27, 2015, SPS, on behalf of Deutsche, filed a foreclosure action against DeLasso, being known as "*Deutsche Bank National Trust Company vs. Susan DeLasso*" Docket No. F-026023-15 (the "Foreclosure").

23.     On or about April 7, 2017, DeLasso, by and through counsel, submitted a loss mitigation application via facsimile to SPS (the "Application"). A copy of the application cover sheet is attached as **Exhibit 2**.

24.     Over the course of the next several months, SPS requested additional documentation and DeLasso made supplemental submissions to SPS.

25.     On or about October 4, 2017, SPS caused Deutsche to move for final judgment against DeLasso in the Foreclosure. A copy of the Notice of Motion for Entry of Final Judgment is attached as **Exhibit 3**.

26.     On October 30, 2017, this Foreclosure court entered final judgment and ordered the Property be sold. A copy of the Final Judgment is attached as **Exhibit 4**.

27.     On or about October 31, 2017, SPS mailed correspondence stating that it received DeLasso's "complete Assistance Review Application, including all required information and documentation necessary to evaluate your account for loss mitigation assistance on **10/30/2017**." (emphasis added). A copy of the October 31, 2017 Letter is attached as **Exhibit 5**.

28.     On October 30, 2017, SPS, by and through foreclosure counsel Frenkel Lambert Weiss Weisman & Gordon, LLP ("FLWWG"), submitted a Writ of Execution for sale of the Property. A copy of the Writ of Execution is attached as **Exhibit 6**.

29.     On or about November 7, 2017, DeLasso sent correspondence to SPS captioned "Notice of Error pursuant to 12 C.F.R. 1024.41(g)" ("NOE #1"). A copy of NOE #1, without attachments, is attached as ***Exhibit 7***.

30.     In NOE #1, DeLasso advised SPS, *inter alia*, of its violation of 12 C.F.R. 1024.41(g) by moving for an order of sale without completing a review of the Application. *See Exhibit 7.*

31.     According to SPS's November 14, 2017 letter (the "Acknowledgement of NOE #1"), SPS received NOE #1 on November 9, 2017. A copy of the Acknowledgment of NOE #1 is attached as ***Exhibit 8***.

32.     In the Acknowledgement of NOE #1, SPS confusingly states that NOE #1 "did not raise an issue with the servicing of your account, we have directed your correspondence to the appropriate department for handling, and we consider this matter closed." *See Exhibit 8.*

33.     SPS responded to NOE #1 (the "Response to NOE #1"), by and through FLWWG, stating that Deutsche has put the Foreclosure on hold. A copy of the Response to NOE #1 is attached as ***Exhibit 9***.

34.     Over the course of the next several months, SPS continued to request additional documentation and DeLasso made supplemental submissions to SPS.

35.     On or about June 8, 2018, SPS informed DeLasso that "After careful review of your account, we find that there are no home retention loss mitigation options for which you are approved" (the "Denial Notice"). A copy of the Denial Notice is attached as ***Exhibit 10***.

36.     The Denial Notice states that DeLasso was denied for a "Proprietary Trial Modification" because it "could not reduce [DeLasso's] principal and interest payment." *See Exhibit 10.*

37.     The Denial Notice allowed DeLasso to appeal the denial within thirty days of June 8, 2018. *See Exhibit 10.*

38.     On or about July 6, 2018, SPS received an appeal of the Denial Notice (the "Appeal") from DeLasso, by and through counsel. A copy of the cover for the Appeal is attached as ***Exhibit 11***.

39.     On or about July 13, 2018, DeLasso, through counsel, sent correspondence captioned "Notice of Error pursuant to 12 C.F.R. 1024.35." ("NOE #2"). A copy of NOE #2, without attachments, is attached as ***Exhibit 12***.

40.     In NOE #2, DeLasso advised SPS that the Denial Notice fails to state that SPS reviewed DeLasso for the Chase Trial Modification programs and requested "the section of the servicing agreement which describes SPS's contractual authority regarding which modification programs the borrower is evaluated for." *See Exhibit 12.*

41.     According to SPS's July 30, 2018 letter (the "Response to NOE #2"), SPS received NOE #2 on July 19, 2018. A copy of the Response to NOE #2 is attached as ***Exhibit 13***.

42.     In the Response to NOE #2, SPS states that its "review included the Chase Trial Modification review" and failed to provide the pooling and servicing agreement related to the Loan. *See Exhibit 13.*

43.     On or about August 10, 2018, DeLasso, through counsel, sent correspondence captioned "Notice of Error pursuant to 12 C.F.R. 1024.35." ("NOE #3"). A copy of NOE #3, without attachments, is attached as ***Exhibit 14***.

44.     In NOE #3, DeLasso advised SPS that the Denial Notice "failed to provide the specific reasons that the Chase Modification was denied, despite the requirement to do so." NOE #3 reminds SPS that the Response to NOE #2 indicated that SPS reviewed the Application for the Chase Modification, but again failed to provide any reasoning for that decision. *See Exhibit 14.*

45.     Further, NOE #3 requests the information used in underwriting for Chase's two modification programs. *See Exhibit 14.*

46.     According to SPS's August 31, 2018 letter (the "Response to NOE #3"), SPS received NOE #3 on August 15, 2018. A copy of the Response to NOE #3 is attached as ***Exhibit 15***.

47.     In the Response to NOE #3, SPS wholly ignores DeLasso's request for SPS's reasons for the denial the Application for the Chase Trial Modification programs, while only discussing its review of the Application for a Proprietary Trial Modification program. *See Exhibit 15.*

48.     On or about September 11, 2018, DeLasso, through counsel, sent correspondence captioned "Notice of Error pursuant to 12 C.F.R. 1024.35 and 12 C.F.R. § 1024.41(d)." ("NOE #4"). A copy of NOE #4, without attachments, is attached as ***Exhibit 16***.

49.     In NOE #4, DeLasso informed SPS that the Response to NOE #3 fails to provide the specific reason for the denial for the Chase Trial Modification programs. *See Exhibit 16*.

50.     Further, NOE #4 requests explanations regarding the interest rate for SPS's Proprietary Trial Modification program and the minimum payment requirement under the Chase Trial Modification programs and the Proprietary Trial Modification program. *See Exhibit 16*.

51.     According to SPS's September 17, 2018 letter (the "Response to NOE #4"), SPS received NOE #4 on September 12, 2018. A copy of the Response to NOE #4 is attached as **Exhibit 17**.

52.     In the Response to NOE #4, SPS again wholly ignores DeLasso's request for SPS's reasons for the denial the Application for the Chase Trial Modification programs. Additionally, SPS refused to answer NOE #4's requests for explanations regarding the interest rate and minimum payment requirement. *See Exhibit 17*.

### IMPACT AND DAMAGE TO DELASSO

53.     SPS's actions in filing the Writ of Execution again constituted prohibited dual-tracking of borrowers by simultaneously actively pursuing foreclosure and putatively processing a loss mitigation application, all to DeLasso's great prejudice and damage.

54.     SPS's actions in failing to review the Application for any and all loss mitigation options and failing to reasonably investigate DeLasso's concerns as expressed

in NOE #2, NOE #3, and NOE #4 caused DeLasso to incur additional attorneys' fees and costs to attempt to obtain information and correct errors.

55.     SPS directly and proximately caused the following damages to DeLasso:

a.     She had to retain and pay legal counsel to submit the notices of error to SPS, pay postage costs for the mailing of the notices of error, and otherwise continue defending the Foreclosure.

b.     She suffered extreme emotional distress directly and proximately caused by not knowing day to day whether or not Deutsche would continue proceeding with the foreclosure in violation of federal law and cause her to lose her house.

56.     Throughout this entire ordeal, DeLasso has simply wanted to obtain a modification, have the Foreclosure, and resume making timely, proper payments on the Loan in order to begin to rehabilitate her credit, and most importantly, remain in her family home.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SPS

57.     SPS's actions are part of a pattern and practice of behavior in violation of DeLasso's rights and in abdication and contravention of SPS's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

58.     At the time of the filing of this Complaint, SPS has had more than Three Thousand Four Hundred Ninety Nine (3,499) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages.

Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www .consumerfinance.gov/complaint database/).

59.     DeLasso has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by SPS against other borrowers. In particular, DeLasso has reviewed the fifteen (15) consumer complaints attached hereto and identified as *Group Exhibit 18*. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that SPS has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

**COUNT ONE**
**VIOLATION OF 12 C.F.R. § 1024.41(g)**

**(Violation of prohibition on moving in support of final judgment with complete loss mitigation application pending review)**

60.     DeLasso restates and incorporates all of her statements and allegations contained in paragraphs 1 through 59, in their entirety, as if fully rewritten herein.

61.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

62.     12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

63.     12 C.F.R. § 1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is

11

complete and notify the borrower in writing within five business (5) days whether the application is complete.

64.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

65.     12 C.F.R. § 1024.41(c)(2)(iv) provides that "[a] loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required pursuant to [12 C.F.R. § 1024.41(b)(2)(i)(B)], when no additional information is requested in such notice."

66.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(c)(2)(iv) provides that 12 C.F.R. § 1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

67.     12 C.F.R. § 1024.41(g) states that

> If a borrower submits a complete loss mitigation application after the first filing required for any judicial foreclosure process, but more than thirty-seven (37) days before a foreclosure sale, then a servicer cannot move for foreclosure judgment or order of sale unless:
>
> (1)  The servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied;
>
> (2)  The borrower rejects all loss mitigation options offered by the servicer; or

      (3)   The borrower fails to perform under an agreement on a loss mitigation option.

68.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(g) provides that:

> The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.

69.    According to SPS's October 31, 2017 Letter, as of October 30, 2017, DeLasso had submitted any and all missing documents and information requested by the written notice with regards to the Application. *See Exhibit 5.*

70.    On October 30, 2017, SPS, by and through FLWWG, submitted a Writ of Execution for sale of the Property. *See Exhibit 6.*

71.    SPS did not send DeLasso additional correspondence requesting documents on October 30, 2017.

72.    At no point on October 30, 2017 did: (1) SPS send notice stating that that DeLasso is not eligible for any loss mitigation options; (2) DeLasso reject all loss mitigation options offered by SPS, as no such options were offered during this period of time; or, (3) DeLasso fail to perform under an agreement on a loss mitigation option, as no such options were offered during this period of time.

73.     The Application was deemed to be a complete loss mitigation application for the purposes of 12 C.F.R. § 1024.41(g) on October 30, 2017, by and through the October 31, 2017 Letter. *See Exhibit 5.*

74.     SPS's actions, in submitting the necessary documentation to allow FLWWG to submit the Writ of Execution while simultaneously reviewing the complete Application, constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(g)

75.     SPS's actions caused DeLasso to suffer actual damages, including, but not limited to, the attorneys' fees incurred for the time in preparing NOE #1, the postage cost for mailing NOE #1, the attorneys' fees incurred in defending the foreclosure matter from the pending sheriff sale, and emotional distress.

76.     SPS's actions are believed to be a part of a pattern and practice of behavior in conscious disregard for DeLasso's rights.

77.     As a result of SPS's actions, SPS is liable to DeLasso for actual damages, statutory damages, costs, and attorneys' fees.

<u>COUNT TWO</u>
<u>VIOLATION OF 12 C.F.R. § 1024.41(c)</u>

**(Failure to perform a review of a borrower's eligibility for any and all loss mitigation options available to a borrower within thirty (30) days of receipt of a complete loss mitigation application)**

78.     DeLasso restates and incorporates all of her statements and allegations contained in paragraphs 1 through 59, in their entirety, as if fully rewritten herein.

79.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))."

80.     12 C.F.R. § 1024.41(c)(1) provides, in part, that

> If a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within thirty (30) days of receiving the complete loss mitigation application, the servicer shall:
>
> (i)   Evaluate the borrower for any and all loss mitigation options available to the borrower; and
>
> (ii)  Provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage.

81.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

82.    According to the Response to NOE #3, as of May 18, 2018, DeLasso had submitted all documentation requested by SPS in order to constitute a complete loss mitigation application. *See Exhibit 15.*

83.    As such, pursuant to 12 C.F.R. § 1024.41(c)(1), SPS was required, within thirty (30) days of May 18, 2018, to: (i) evaluate DeLasso for all loss mitigation options available to DeLasso; and, (ii) provide written notice to DeLasso "stating [SPS's] determination of which loss mitigation options, if any, it will offer to [DeLasso] on behalf of the owner or assignee of the mortgage."

84.    That is, pursuant to 12 C.F.R. § 1024.41(c)(1), SPS was required to evaluate DeLasso for all loss mitigation options available to DeLasso and send written notice to DeLasso detailing its determination of DeLasso's eligibility for such, on or before June 17, 2018.

85.     SPS did not issue any requests to DeLasso for any additional or missing information and/or documentation, of which SPS was not already in possession, in order to supplement or otherwise complete the loss mitigation application during the time period from May 18, 2018 to June 8, 2018.

86.     On information and belief, SPS did not evaluate DeLasso for both Chase Trial Modification programs and send written notice to DeLasso detailing its determination of DeLasso's eligibility for such, on or before June 17, 2018.

87.     SPS's failure to review DeLasso's complete loss mitigation application within thirty (30) days of receipt constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(c).

88.     SPS's actions caused DeLasso to suffer actual damages, including, but not limited to, the attorneys' fees incurred for the time in preparing NOE #2, NOE #2, and NOE #4, the postage cost for mailing NOE #2, NOE #2, and NOE #4, the attorneys' fees incurred in defending the foreclosure matter from the pending sheriff sale, and emotional distress.

89.     SPS's actions are believed to be part of a pattern and practice of behavior in conscious disregard for DeLasso's rights.

90.     As a result of SPS's actions, SPS is liable to DeLasso for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE
### VIOLATION OF 12 C.F.R. § 1024.41(d)

**(Failure to perform a reasonable investigation into and correct asserted errors)**

91.    DeLasso restates and incorporates all of her statements and allegations contained in paragraphs 1 through 59, in their entirety, as if fully rewritten herein.

92.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

93.    12 C.F.R. § 1024.41(c)(1) provides, in part, that

If a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within thirty (30) days of receiving the complete loss mitigation application, the servicer shall:

(i)    Evaluate the borrower for any and all loss mitigation options available to the borrower; and

(ii)    Provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage.

94.    12 C.F.R. § 1024.41(d) provides that:

If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

95.    Comment 2 of the Official Interpretation of the CFPB for 12 C.F.R. § 1024.41(d) provides "[i]f a trial or permanent loan modification is denied because of a net present value calculation, the specific reasons in the notice provided to the borrower must include the inputs used in the net present value calculation [emphasis added]."

96.    SPS sent the Denial Notice on or about June 8, 2018. *See Exhibit 10*.

97.     The Denial Notice alleged DeLasso did not qualify for the Proprietary Trial Modification program, but failed to provide any specific information about the Chase Trial Modification programs. *See Exhibit 10.*

98.     In the Response to NOE #2, SPS stated that its "review included the Chase Trial Modification review," but did not provide any specific information about the review. *See Exhibit 13.*

99.     SPS's failure to provide a proper denial letter constitutes an egregious clear, separate, and distinct violation of 12 C.F.R. § 1024.41(d).

100.     In addition to the damages outlined, *supra*, SPS's violation of 12 C.F.R. § 1024.41(d) directly and proximately caused DeLasso to incur actual damages including but not limited to attorneys' fees and the costs of paper and postage required to submit NOE #2, NOE #3, and NOE #4.

101.     SPS's actions are part of a pattern and practice of behavior in conscious disregard for DeLassos rights.

102.     As a result of SPS's actions, SPS is liable to DeLasso for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR
## VIOLATION OF 12 C.F.R. § 1024.35(e)

### (Failure to perform a reasonable investigation into and correct asserted errors by NOE #2, NOE #3, and NOE #4)

103.     DeLasso restates and incorporates all of her statements and allegations contained in paragraphs 1 through 59, in their entirety, as if fully rewritten herein.

104.   12 C.F.R. § 1024.35(a) provides: A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

105.   Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

106.   Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards the borrower's mortgage loan.

107.   12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

    (A)  Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B)  Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

108.    NOE #2 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 12.*

109.    DeLasso sent NOE #2 to SPS at the address SPS designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c). *See Exhibit 12.*

110.    SPS received NOE #2 at the address SPS designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c).

111.    In NOE #2, DeLasso advised SPS that the Denial Notice fails to state that SPS reviewed DeLasso for the Chase Trial Modification programs and requested "the section of the servicing agreement which describes SPS's contractual authority regarding which modification programs the borrower is evaluated for." *See Exhibit 12.*

112.    In the Response to NOE #2, SPS states that its "review included the Chase Trial Modification review" and failed to provide the pooling and servicing agreement related to the Loan. *See Exhibit 13.*

113.    SPS did not inform DeLasso in the Response to NOE #2 that it had corrected any of the errors alleged in NOE #2. *See Exhibit 13.*

114.    It is clear that SPS did not perform a reasonable investigation into the errors alleged by and through NOE #2, as the Response to NOE #2 failed to substantially address the concerns of NOE #2 and instead focuses on SPS's review of the Application for the Proprietary Trial Modification program. *See Exhibit 12 and Exhibit 13.*

115.    NOE #3 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 14.*

116.    DeLasso sent NOE #3 to SPS at the address SPS designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c). *See Exhibit 14.*

117.    SPS received NOE #3 at the address SPS designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c).

118.    In NOE #3, DeLasso (1) States that the Denial Notice "failed to provide the specific reasons that the Chase Modification was denied, despite the requirement to do so;" (2) Informs SPS that the Response to NOE #2 indicated that SPS reviewed the Application for the Chase Modification, but again failed to provide any reasoning for that decision; and, (3) Requests the information used in underwriting for Chase's two modification programs. *See Exhibit 14.*

119.    In the Response to NOE #3, SPS wholly ignores DeLasso's request for SPS's reasons for the denial the Application for the Chase Trial Modification programs, while only discussing its review of the Application for the Proprietary Trial Modification program. *See Exhibit 15.*

120.    SPS did not inform DeLasso in the Response to NOE #3 that it had corrected any of the errors alleged in NOE #3. *See Exhibit 15.*

121.    It is clear that SPS did not perform a reasonable investigation into the errors alleged by and through NOE #3, as the Response to NOE #3 failed to substantially address the concerns of NOE #3 and provided the same information contained in the Response to NOE #3. *See Exhibit 14 and Exhibit 15.*

122.    NOE #4 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See Exhibit 16.

123.    DeLasso sent NOE #4 to SPS at the address SPS designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c). *See Exhibit 16.*

124.    SPS received NOE #4 at the address SPS designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c).

125.    In NOE #4, DeLasso: (1) Informed SPS that the Response to NOE #3 fails to provide the specific reason for the denial for the Chase Trial Modification programs and (2) Requests explanations regarding the interest rate for SPS's Proprietary Trial Modification program and the minimum payment requirement under the Chase Trial Modification programs and the Proprietary Trial Modification program. *See Exhibit 16.*

126.    In the Response to NOE #4, SPS again wholly ignores DeLasso's request for SPS's reasons for the denial the Application for the Chase Trial Modification programs. Additionally, SPS refused to answer NOE #4's requests for explanations regarding the interest rate and minimum payment requirement. *See Exhibit 17*

127.    SPS did not inform DeLasso in the Response to NOE #4 that it had corrected any of the errors alleged in NOE #4. *See Exhibit 17.*

128.    It is clear that SPS did not perform a reasonable investigation into the errors alleged by and through NOE #4, as the Response to NOE #4 failed to substantially address the concerns of NOE #4 and provided the same information contained in the Response to NOE #2 and the Response to NOE #3. *See Exhibit 16 and Exhibit 17.*

129.    To date, SPS has failed to correct or perform a reasonable investigation into the errors asserted by and through NOE #2, NOE #3, and NOE #4.

130.    SPS's failure to correct or properly investigate the errors alleged in NOE #2, NOE #3, and NOE #4 constitutes clear, separate, and distinct violations of 12 C.F.R. § 1024.35(e).

131.    SPS's actions caused DeLasso to suffer actual damages, including, but not limited to, the attorneys' fees incurred for the time in preparing NOE #2, NOE #3, and NOE #4, the postage cost for mailing NOE #2, NOE #3, and NOE #4, the attorneys' fees incurred in defending the foreclosure matter from the pending sheriff sale, and emotional distress.

132.    SPS's actions are believed to be part of a pattern and practice of behavior in conscious disregard for DeLasso's rights.

133.    As a result of SPS's actions, SPS is liable to DeLasso for actual damages, statutory damages, costs, and attorneys' fees.

<u>COUNT FIVE</u>
<u>VIOLATION OF N.J.S.A § 56:8-2</u>

**(Consumer Fraud Act)**

134.    DeLasso restates and incorporates all of her statements and allegations contained in paragraphs 1 through 59, in their entirety, as if fully rewritten herein.

135.    The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. § 56:8-2.

136.    In the operation of its business, SPS has engaged in the use of unconscionable commercial practices through its pattern and practice of disregarding and violating the regulations set forth under 12 C.F.R. §§ 1024.35 and 1024.41 as described, *supra*.

137.    Each unconscionable practice, false promise, misrepresentation and/or knowing omission of material fact by SPS described, *supra*, constitutes a separate violation under the CFA.

138.    SPS's unconscionable commercial practices have caused DeLasso the following ascertainable losses:

   a.    Retain and pay legal counsel to defend the Foreclosure from the pending sheriff's sale;

   b.    Retain and pay legal counsel to submit four notices of error and review responses to those notices of error; and,

   c.    Extreme emotional distress directly and proximately caused by not knowing day to day whether or not Deutsche would continue proceeding with the foreclosure and cause DeLasso to lose her house.

## CONCLUSION

139.    SPS's dual-tracking, failure to properly review the Application or provide specific reasons for denial of the Application, and failure to reasonably investigate asserted errors are consistent with SPS's continuing poor mortgage servicing practices and non-compliance with the RESPA regulations contained in 12 C.F.R. §§ 1024.35 and 1024.41.

140.    SPS's conduct is part of a pattern and practice and, pursuant to 12 U.S.C. § 2605(f)(1)(B), DeLasso is entitled to statutory penalties for each violation of the regulations contained in 12 C.F.R. §§ 1024.35 and 1024.41.

141.    As a direct and proximate result of SPS's conduct and the distinct and ongoing violations above enumerated, DeLasso suffered actual damage in the form of embarrassment, wasted time, frustration, and humiliation along with the emotional distress that follows from the improperly advanced foreclosure proceeding and SPS's failure to correct errors. DeLasso was forced to incur attorneys' fees and costs to investigate and defend the Foreclosure, and attorney fees to investigate and prepare this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Susan DeLasso prays that this Court enter its order granting judgment against Defendant Select Portfolio Servicing, Inc., as follows:

A.    For actual damages as to each of Counts One through Five;

B.    For statutory damages of up to One Thousand Dollars ($1,000.00) for each such RESPA violation as to each of Counts One through Four;

C.    For costs and reasonable attorneys' fees incurred in bringing this Complaint as to each of Counts One through Four;

D.    For treble damages, attorneys' fees, and costs as to Count Five; and,

E.    Such other relief which this Court may deem appropriate.


Respectfully submitted:

/s/ Javier L. Merino
Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, New Jersey 07073
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

/s/ Joshua W. Denbeaux
Joshua W. Denbeaux
Denbeaux & Denbeaux
366 Kinderkamack Road
Westwood, New Jersey 07675
Telephone: (201) 664-8855
Facsimile: (201) 666-8589
filings@denbeauxlaw.com

*Counsel for Plaintiff Susan DeLasso*

## JURY DEMAND

DeLasso hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
DannLaw

/s/ Joshua W. Denbeaux
Joshua W. Denbeaux
Denbeaux & Denbeaux

*Counsel for Plaintiff Susan DeLasso*